```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
```
_____

In re:

RANDY D. WYDNER and
PAMELA R. WYDNER,

　　　　　　　Debtors.

CASE NO. 10-20209

DECISION & ORDER

_____

## BACKGROUND

On February 4, 2010, Randy D. Wydner ("Randy") and Pamela R. Wydner ("Pamela") (collectively, the "Debtors"), filed a petition initiating a Chapter 7 case, and Kenneth W. Gordon, Esq. was appointed as their Chapter 7 Trustee (the "Trustee").

In the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtors indicated: (1) on their Statement of Financial Affairs, that on September 17, 2009, they received a lump sum payment of $150,000.00 from Randy's Workers' Compensation claim (the "Workers' Compensation Proceeds"); (2) on their Schedule B - Personal Property, that they had a Chemung Canal Trust joint checking account (the "Chemung Account"), that had a current balance of $57,000.00, which the Debtors indicated was comprised entirely of monies from the Workers' Compensation Proceeds; and (3) on their Schedule C - Exempt Property, that the monies on deposit in the Chemung Account were claimed exempt under

**BK. 10-20209**

New York State Workers' Compensation Law Section 33 and New York State Labor Law Section 595(2).[1]

On March 31, 2010, the Trustee filed an Objection to the Debtors' Claim of Exemptions as to the monies on deposit in the Chemung Account.

On November 12, 2010, the Trustee filed a Motion for Turnover of Property of the Estate under Section 542 (the "Turnover Motion"), which asserted that: (1) Randy received the Workers' Compensation Proceeds as a result of a motor vehicle accident that occurred during the course of his employment as a truck driver with Wal-Mart (the "Motor Vehicle Accident"); (2) while the Workers' Compensation Proceeds totaled $150,000.00, Randy had actually received only $135,000.00, after $15,000.00 in attorneys' fees were subtracted from the Proceeds; (3) in 2009, Randy was also awarded $8,500.00 (the "Personal Injury Proceeds") from the settlement of a personal injury claim, based upon the Motor Vehicle Accident, against the other driver's insurance carrier; (4) Randy deposited the $143,500.00 in Workers' Compensation and Personal Injury

---

[1] The Court notes that: (1) although the Debtors failed to properly claim an exemption in their Schedules, the Court hereby finds the Debtors' subsequent claim to an exemption under New York Debtor and Creditor Law ("DCL") Section 282(2)(c)("Section 282(2)(c)"), to be sufficient; (2) New York Civil Practice Law and Rules ("CPLR"), for the purpose of this Decision & Order, the applicable provisions of the CPLR and DCL are those that were in effect upon the date of the Debtors' filing on February 4, 2010; and (3) the DCL Section 285, alternative federal exemptions, which permits a debtor to utilize the federal exemptions contained in Section 522, was not effective until January 21, 2011, so that it is inapplicable to this Decision & Order.

**Page 2**

BK. 10-20209

Proceeds into the Chemung Account; (5) instead of paying down their debts, which included all or a part of their scheduled unsecured consumer debt of $74,797.00, the Debtors spent nearly $100,000.00 of the Workers' Compensation and Personal Injury Proceeds on expenditures that included: (a) home improvements, such as new carpeting; (b) luxury items, such as a large screen television; and (c) elective gastric bypass surgery for Randy; (6) as of the date of the filing of their petition there was only $57,500.84 of the Workers' Compensation Proceeds on deposit in the Chemung Account;[2] (7) the Trustee had requested that the Debtors turnover the monies on deposit in the Chemung Account;[3] and (8) the Debtors had responded that they intended to spend the remaining monies on deposit in the Chemung Account, on bills, living expenses and further medical procedures.

---

[2] The Debtors have asserted, and the Trustee has not contested, that the balance of $57,500.84 remaining in the Chemung Account consists solely of the Workers' Compensation Proceeds, not the Personal Injury Proceeds. Accordingly, the Debtors have claimed an exemption in the Chemung Account solely upon the basis that it is exempt as a result of its status as Workers' Compensation funds. Therefore, it is unnecessary for the Court to determine whether the Personal Injury Proceeds are exempt.

[3] The Trustee initially requested turnover of $28,750.42, representing Pamela's half-interest in the Chemung Account, which the Trustee claimed was not exempt, while Randy's remaining half-interest in the Workers' Compensation Proceeds was exempt. The Trustee later asserted this position only in the alternative, and in the first instance, asserted that the entire balance of the Workers' Compensation Proceeds were not exempt. It is not necessary for the Court to address the Trustee's alternate assertion because the Court, in this Decision & Order, holds that the Workers' Compensation Proceeds on deposit in the Chemung Account are not exempt.

Page 3

**BK. 10-20209**

On January 12, 2011, the Debtors filed a Response to the Turnover Motion, which asserted that: (1) on October 6, 2009, Randy deposited the check for $135,000.00 for the Workers' Compensation Proceeds in the Chemung Account, which was segregated solely for the use of the Workers' Compensation Proceeds; (2) the Debtors' income for 2009, as stated on their federal tax return, was negative $10,336.00, and the Debtors only steady income for 2009 was a small amount of monthly income that Pamela earned from running a daycare business in the Debtors' home; and (3) the Workers' Compensation Proceeds were expended exclusively for Randy's support and maintenance, and to meet his legal obligation to support his spouse, Pamela, with such expenses having included: (a) the television purchased by Randy, which was a modest replacement for a broken television; and (b) Randy's gastric bypass surgery, which was not elective because Randy had sustained a back injury in the Motor Vehicle Accident, and since at that time, he was grossly overweight, his doctors advised him that if he did not lose a significant amount of weight, then he would never be able to work again, and he would suffer medical complications related to his obesity.

On February 24, 2011, the Trustee filed a Supplemental Affirmation and Memorandum of Law in Support of the Turnover Motion, which indicated that: (1) based upon the Court's Decision

**Page 4**

**BK. 10-20209**

& Order in In re Herald, 294 B.R. 440 (Bankr. W.D.N.Y. 2003)("Herald"), while the Workers' Compensation Proceeds constituted a "disability" benefit under Section 282(2)(c);[4] (2) the monies on deposit in the Chemung Account were not exempt because, unlike the settlement proceeds received post-petition in Herald, the Workers' Compensation Proceeds were received pre-petition; (3) although Section 282(2)(c) and Section 522(d)(10)(C)[5] permit the exemption of "the debtor's right to receive" disability benefits, neither statute provided for the exemption of disability

---

[4] Section 282(2)(c) provides that:

> Under section five hundred twenty-two of title eleven of the United States Code, entitled "Bankruptcy", an individual debtor domiciled in this state may exempt from the property of the estate...(iii) the following property:
>
> 2. Bankruptcy exemption for right to receive benefits. The debtor's right to receive or the debtor's interest in:
>
> > (c) a disability, illness, or unemployment benefit[.]

N.Y. Debt. & Cred. Law § 282 (2011).

[5] Section 522(d)(10) provides that:

> (d) The following property may be exempted under subsection (b)(2) of this section:
>
> > (10) The debtor's right to receive—...
> >
> > > (C) a disability, illness, or unemployment benefit;...

11 U.S.C. § 522 (2011).

Case 2-10-20209-PRW    Doc 45    Filed 07/11/11    Entered 07/11/11 15:31:06    Desc Main
Document    Page 5 of 19

benefits received pre-petition; (4) in a number of the Decisions of the Bankruptcy Courts in the United States Court of Appeals for the Second Circuit and other Circuits, including In re Panza, 219 B.R. 95 (Bankr. W.D.Pa. 1998) ("Panza") and In re Chapman, 177 B.R. 161 (Bankr. D.Conn. 1994 ("Chapman"), the Courts have: (a) held that the plain meaning of Section 522(d)(10) indicated that the exemption of benefits ended once a debtor received the benefits pre-petition and deposited them into a bank account, even if the benefits are segregated and clearly traceable; (b) noted, in such Decisions, the difference between "the debtor's right to receive" a benefit under Section 522(d)(10) and Section 282(2)(c), where a debtor's right to claim an exemption in benefits ends upon the debtor's receipt of such benefit, and a debtor's property under Section 522(d)(11)[6] and DCL Section 282(3),[7] that is "traceable to"

---

[6] Section 522(d)(11) provides that:

> (11) The debtor's right to receive, or property that is traceable to—
>
> (A) an award under a crime victim's reparation law;
>
> (B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;...

11 U.S.C. § 522 (2011).

[7] New York State Debtor & Creditor Law Section 282(3) provides that:

> Bankruptcy exemption for right to receive certain property. The debtor's right to receive, or property that is traceable to:

**Page 6**

certain funds or payments, so that such funds, received pre-petition may be exempt; and (c) stated, with respect to this distinction, that where the State legislatures sought to preserve an exemption for funds received pre-petition that were traceable to a specific benefit, the legislatures were aware of how do to so by adding the appropriate "traceable to" language to the statute; and (5) the monies on deposit in the Chemung Account were: (a) no longer a disability benefit that the Debtor had a "right to receive" under Section 282(2); and (b) not specifically identified as funds that could be traced under Section 282(3), so that the Debtors were not entitled to an exemption in the monies.

On March 8, 2011, the Debtors filed a Memorandum of Law in Opposition to the Turnover Motion, which asserted that: (1) under the Decision of New York State Court of Appeals in <u>Surace v. Danna</u>, 248 N.Y. 18 (N.Y. Ct. App. 1928)("<u>Surace</u>"), it has been established in New York that Workers' Compensation awards are wholly exempt; and (2) under this Court's Decision in <u>Herald</u>, Workers' Compensation benefits, such as the monies on deposit in the Chemung Account, are exempt.

---

> (i) an award under a crime victim's reparation law; (ii) a payment on account of the wrongful death of an individual of whom the debtor was a dependent to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;...

N.Y. Debt. & Cred. Law § 282 (2011).

On March 25, 2011, the Court held a hearing on the Turnover Motion, and reserved decision.

On March 31, 2011, the Debtors filed a Supplemental Affirmation, which indicated that it was the intent of the New York State Legislature (the "NYS Legislature") to provide for an exemption of all Workers' Compensation funds in a debtor's bank account upon a debtor's filing for bankruptcy, because: (1) Section 522(d)(10) begins with the phrase "[t]he debtor's right to receive[,]" while Section 282(2), which was enacted by the NYS Legislature subsequent to the enactment of Section 522(d)(10) by Congress, begins with the phrase "...[t]he debtor's right to receive or the debtor's interest in[,]" so that: (a) the NYS Legislature must have intended to broaden the definition of assets to be exempted under Section 282(2); and (b) because of this different statutory language, the decisions of the Federal Courts that had analyzed Section 522(d)(10) were not necessarily applicable to an analysis of Section 282(2); and (2) the NYS Legislature, in its 2009 amendments to the CPLR, which were enacted subsequent to this Court's Decision in <u>Herald</u> provided: (a) in CPLR Sections 5205(l)("Section 5205(l)") and (l)(2) ("Section 5205(l)(2)"),[8] and CPLR Section 5222-a ("Section 5222-a") for the

---

[8] Section 5205(l) and Section 5205(l)(2) provide that:

> (l) Exemption of banking institution accounts into which statutorily exempt payments are made electronically or by direct deposit.

Page 8

exemption of a minimum of $2,500.00 in any bank account where direct deposit or electronic payments reasonably identifiable as statutorily exempt payments, including Workers' Compensation payments, are located; and (b) in Section 5222-a, the procedure, if a qualifying bank account with exempt funds exists, for the debtor to assert an exemption claim to such funds, which includes Workers' Compensation funds.

On April 6, 2011, the Trustee filed a Supplemental Memorandum of Law, which stated that: (1) Sections 5205(l) and (l)(2) did not apply to the monies on deposit in the Chemung Account because: (a) the Debtor had received the Workers' Compensation Proceeds more than forty-five days prior to filing his petition, and (b) the Workers' Compensation Proceeds were not directly deposited nor electronically deposited in the Chemung Account; (2) Section 5222-a solely contained notice provisions, which did not create a

---

(2) For purposes of this article, "statutorily exempt payments" means any personal property exempt from application to the satisfaction of a money judgment under any provision of state or federal law. Such term shall include, but not be limited to, payments from any of the following sources: social security, including retirement, survivors' and disability benefits, supplemental security income or child support payments; veterans administration benefits; public assistance; workers' compensation; unemployment insurance; public or private pensions; railroad retirement; and black lung benefits.

N.Y. Civil Practice Law and Rules Law § 5205 (2011).

**Page 9**

**BK. 10-20209**

substantive right for a debtor to claim an exemption; and (3) since the Trustee had been informed that the Debtors had spent the monies on deposit in the Chemung Account, despite the Trustee's demands for such monies to be preserved pending the Court's Decision on the Turnover Motion, the Trustee requested a surcharge of the Debtors' exemptions in the amount of the monies on deposit in the Chemung Account.[9]

## DISCUSSION

### A. Workers' Compensation Funds Under Section 282(2) and this Court's Decision & Order in Herald

The Court hereby makes the following determinations and clarifications regarding the Turnover Motion, Section 282(2) and this Court's Decision & Order in Herald:

1. based upon the Court's Decision & Order in Herald, Workers' Compensation funds are exempt "disability" benefits under Section 282(2)(c), however, the Workers' Compensation settlement funds in Herald were received post-petition, so that Herald does not establish that the monies on deposit in the Chemung Account, which were Workers' Compensation Proceeds received and deposited pre-petition, are exempt disability benefits under Section 282(2)(c);

---

[9] The Court will not, in this Decision & Order address the Trustee's request for a surcharge, without prejudice to the Trustee filing a separate motion seeking such a surcharge.

**Page 10**

**BK. 10-20209**

2. the Court reaffirms Herald, so that a debtor's right to receive post-petition Workers' Compensation funds constitutes "the debtor's right to receive" disability benefits under the plain meaning of Section 282(2)(c);

3. unlike the debtor in Herald, Randy received and deposited all of his Workers' Compensation Proceeds pre-petition, therefore under Section 282(2)(c), he had no "right to receive" any Proceeds post-petition; and

4. prior to 1989, Sections 282(2)(c) and 283(3) contained the exact same language in relevant part, as Sections 522(d)(10) and 522(d)(11). The Court finds that the phrase "or the debtor's interest in[,]" in Section 282(2)(c), added by a 1989 Amendment[10] is ambiguous, so for the purposes of determining an applicable exemption, the Court is unable to determine whether Randy or the Debtors have an "interest in" the monies on deposit in the Chemung Account, based solely upon the plain language of the 1989 Amendment to Section 282(2)(c). Therefore, the Court will look to the applicable legislative history in making its determination.

---

[10] S.B. 6356-A, Ch. 280 1989-1990 Reg. Sess. (N.Y. 1989), effective July 7, 1989 (the "1989 Amendment").

**BK. 10-20209**

**B.  <u>Legislative History of Section 282</u>**

Section 282(2) was amended by the 1989 Amendment to reflect the following changes:

> Bankruptcy exemption for right to receive benefits.  The debtor's right to receive <u>or the debtor's interest in</u>: (a) a social security benefit, unemployment compensation or a local public assistance benefit; (b) a veterans' benefit; (c) a disability, illness, or unemployment benefit; (d) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and (e) [a payment] <u>all payments</u> under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service [to the extent reasonably necessary for the support of the debtor and any dependent of the debtor,] unless (i) such plan or contract<u>, except those qualified under section 401 of the United States Internal Revenue Code of 1986, as amended</u>, was established by the debtor or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose, (ii) such plan is on account of age or length of service, and (iii) such plan or contract does not qualify under section four hundred one a, four hundred three a, four hundred three b, four hundred eight, four hundred nine or four hundred fifty-seven of the Internal Revenue Code of nineteen hundred [fifty-four] <u>eighty-six, as amended</u>.

The legislative history to the 1989 Amendment, NY Bill Jacket, S.B. 6356-A, Ch. 280 1989-1990 Reg. Sess. (N.Y. 1989) (the "Legislative History") indicated:

1.  in the Bill Jacket that the 1989 Amendment was enacted to amend: (a) the CPLR, in relation to the personal property

**Page 12**

exempt from application to the satisfaction of money judgments; (b) the Estates, Powers and Trusts Law ("EPTL") in relation to when a disposition in trust for the creator of the trust is void as against creditors; and (c) the DCL, in relation to permissible exemptions in bankruptcy;

2. in a letter, dated June 26, 1989, from Assemblymen Sheldon Silver, Chairman of the Assembly Codes Committee, to the Hon. Evan A. Davis, Counsel to the Governor of New York, attaching a Memorandum in Support ("Memorandum in Support"), that the 1989 Amendment would amend the CPLR, EPTL and DCL "to require that qualified retirement plans are to be considered spendthrift trusts for purposes of federal bankruptcy law, and to require that all interests in or payments from such plans are exempt property[;]"

3. in the Memorandum in Support: (a) Summary of Specific Provisions, that Section 282(2) was "amended to clarify that a bankruptcy debtor's exempt property includes all interests or payments from an ERISA-qualified retirement plan[;]" and (b) Purpose or General Idea of Bill, that: (i) several Bankruptcy Courts, in jurisdictions that had not explicitly exempted qualified retirement plans as spendthrift trusts, had held that a debtor-plan participant's interests in such plans were part of the bankruptcy estate, resulting in disqualification of the retirement plan under the Internal

**Page 13**

> Revenue Service ("IRS") guidelines, once a payment from the plan was paid to the bankruptcy trustee; and (ii) as a result, the NYS Legislature was ensuring the protection of qualified retirement plans by amending the CPLR, EPTL and DCL to explicitly indicate that qualified retirement plans are to be considered spendthrift trusts for purposes of federal bankruptcy law, and interests in or payments from such plans were exempt property; and

4. in a letter, dated June 28, 1989, from the Chair of the Association of the Bar of the City of New York to the Hon. Evan A. Davis, that: (a) the House Report on the Bankruptcy Code,[11] with respect to the exemption of a trust provided for in Section 541(c)(2),[12] "specifically refers to the exclusion from the debtor's estate of his interest in a spendthrift trust to the extent the trust is excluded from creditors under applicable state law[;]" and (b) the 1989 Amendment addressed the issue of whether a creditor can reach a debtor's interest

---

[11] H.R. Rep. No. 595 95th Cong., 2d Sess. 176.

[12] Section 541(c)(2) provides that:

> (c)(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541 (2011).

in an ERISA qualified plan in bankruptcy, by making it clear that ERISA qualified plans are spendthrift trusts.

**C.  Analysis**

The Court holds that neither Randy, individually, nor the Debtors, collectively, can claim an exemption in the monies on deposit in the Chemung Account, based upon Section 282(2)(c), for the following reasons:

1. the Court does not find Herald controlling, as asserted by the Debtors, for the reasons discussed in this Decision & Order;
2. Surace, relied upon by the Debtors, did not address Section 282(2) or the exemptions available to New York State residents in bankruptcy, which are controlled by the specific provisions of Section 282 with respect to disability benefits;
3. the Legislative History to Section 282(2) indicates that: (a) the 1989 Amendment was enacted solely to address the treatment of ERISA-qualified retirement plans under DCL Section 282(2)(e); (b) the NYS Legislature's specific addition of the phrase, "or the debtor's interest in[,]" to Section 282(2) was not to establish a debtor's right to exempt his interest in benefits received pre-petition, such as disability benefit funds under Section 282(2)(c), but rather, it was to ensure that a debtor's interest in or payments from qualified retirement plans are exempt property; and (c) there is no basis in the Legislative History for the Court to determine

that the 1989 Amendment, which added the phrase "or the debtor's interest in[,]" was enacted to establish that a debtor's interest in Workers' Compensation settlement funds, received and deposited pre-petition, are exempt under Section 282(2)(c);

4. since the addition of the phrase, "the debtor's interest in" under 1989 Amendments to Section 282(2), relates solely to ERISA-qualified retirement plans under DCL Section 282(2)(e): (a) for the purpose of interpreting Section 282(2)(c), it remains identical to the language of Section 522(d)(10)(C) and Section 282(2)(c), as enacted prior to the 1989 Amendment, as to any right to receive other benefits, awards or payments; (b) while the Decisions of the Federal Courts that have analyzed Section 522(d)(10), including Panza and Chapman, do not address the "debtor's interest in" benefits language in Section 282(2), the Court finds them persuasive regarding the language, meaning and intent of Section 522(d)(10), as adopted by the NYS Legislature when it enacted Section 282(2)(c) prior to the 1989 Amendments, including that: (i) Congress was aware of the distinction between a debtor's right to receive the items listed under Section 522(10), and a debtor's right to receive, or property that is traceable to, the items listed under Section 522(d)(11); and (ii) the NYS Legislature, when it chose to adopt the language of Sections 522(d)(10) and

**Page 16**

(d)(11) when drafting Sections 282(2)(c) and 283(3), was also aware of this distinction, so that this Court cannot find that the monies on deposit in the Chemung Account, which the Debtor asserts are traceable to the Workers' Compensation Proceeds, are exempt under Section 282(2)(c);

5. neither Randy, individually, nor the Debtors, collectively, can otherwise claim an exemption in the monies on deposit in the Chemung Account: (a) based upon Section 5205(l) or (l)(2), because such monies were not deposited electronically or by direct deposit, nor within forty-five days of the Debtors' bankruptcy filing, as required under the plain meaning of Section of 5205(l); or (b) under Section 5222-a, because this section does not establish a substantive right to claim an exemption in bankruptcy, nor recognize that a right exists for the Debtors to claim an exemption in the monies on deposit in the Chemung Account;

6. while not necessary to the Court's holding in this Decision & Order, the Court notes that it is persuaded that the NYS Legislature did not provide for the exemption of all Workers' Compensation settlement funds received and deposited pre-petition, since: (a) the NYS Legislature limited the exemption provided for under Sections 5205(l) and (l)(2), to Workers' Compensation funds received by direct or electronic deposit within forty-five days of filing; and (b) the NYS

**Page 17**

    Legislature could easily have provided a bankruptcy exemption of Workers' Compensation settlement funds received and deposited pre-petition, if it chose to, by specifically including them in Section 282(3); and

7. while the Court recognizes that it is often said that exemptions are to be liberally construed: (a) a debtor's right to an exemption is governed by statute, not by equitable considerations, and in this case, the Debtors are not entitled to an exemption in the monies on deposit in the Chemung Account, based upon the language, meaning and Legislative History of Section 282(2)(c), as analyzed in this Decision & Order; (b) while a debtor is entitled to a fresh start under the Bankruptcy Code and Rules, permitting the Debtors to claim an exemption here might result in more of a head start, since it would be unsupported by Section 282(2)(c) and would also frustrate the policy of equality of distribution; and (c) a ruling in favor of the Debtors could lead to the exemption of other property that is traceable to the Workers' Compensation Proceeds, such as the large screen television purchased by the Debtors, a result which could not have been contemplated by the NYS Legislature in enacting Section 282(2), since the exemption of such property is provided for otherwise under the DCL.

BK. 10-20209

## **CONCLUSION**

The Turnover Motion is hereby granted in all respects.

**IT IS SO ORDERED.**

                                                                            /s/
                                      **HON. JOHN C. NINFO, II**
                                      **U.S. BANKRUPTCY JUDGE**

**Dated: July 11, 2011**

Page 19